Cereal Products Refining Corporation (Now Known as Acme Breweries), Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Docket No. 86538.   Promulgated January 17, 1939.

*Norman A. Eisner, Esq.*, and *Myrtile Cerf, C. P. A.*, for the petitioner.

*H. D. Thomas, Esq.*, for the respondent.

**OPINION.**

HARRON: The deficiency in this proceeding results from respondent's determination that the petitioner corporation's income tax liability for 1933 should be computed, assessed, and collected on the basis of the consolidated income of petitioner and an affiliated corporation. Respondent has made this determination by application to the year 1933 of article 11 (*a*) of Regulations 78.[1] Regulations 78 were prescribed under section 141 (b) of the Revenue Act of 1932, and were approved by the Secretary of the Treasury on December 7, 1932. If article 11 (*a*) of the regulations is properly applied to the year 1933, article 15 of the regulations, which imposed upon members of an affiliated group of corporations several liability for tax and any deficiency in respect thereof computed upon the consolidated net income of the group, is also applicable. Petitioner has been assessed the full amount of the deficiency, $29,657, under article 15 of Regulations 78. The only question for decision is whether petitioner's income tax liability for 1933 should be computed on the basis of the separate income tax return which it made for itself, or upon the basis of consolidated income of petitioner and an affiliated corporation. It is respondent's contention that, since a consolidated return was made by petitioner under Regulations 78, for the year 1932, a consolidated return must be made for the year 1933, during which time the two corporations remained affiliated. It is the contention of petitioner that, even though it made a consolidated return for the taxable year 1932, availing itself of the option afforded to it by the terms of section 141 (a) of the Revenue Act of 1932, it had, nevertheless, a new election for the year 1933 with respect to the method of making income tax return because changes were made in the Revenue Act of

---

[1] ART. 11. Consolidated Returns for Subsequent Years.

(a) *Consolidated Returns Required for Subsequent Years.*

If a consolidated return is made under these regulations for the taxable year 1932 or any taxable year thereafter, a consolidated return must be made for each subsequent taxable year during which the affiliated group remains in existence unless (1) a corporation (other than a corporation created or organized, directly or indirectly, by a member of the affiliated group) has become a member of the group during such subsequent taxable year, or (2) one or more provisions of these regulations, which have previously been consented to, have been amended, or (3) the Commissioner, prior to the time of making the return, upon application made by the common parent corporation and for good cause shown, grants permission to change.

1932 by enactment of certain revenue provisions in the National Industrial Recovery Act, enacted June 16, 1933. In substance, the petitioner contends that the Commissioner may not apply article 11 (*a*) of Regulations 78 to the taxable year 1933 in such way as to deny petitioner a new election under section 141 (a) for the year 1933.

Since the issue in this proceeding arises out of application of an administrative regulation, it is pertinent to comment first upon the recognized limitations upon the application of the administrative regulations. We refer to a decision of the Supreme Court in *Manhattan General Equipment Co.* v. *Commissioner*, 297 U. S. 129, in which the Court stated as follows:

> The power of an administrative officer or board to administer a federal statute and to prescribe rules and regulations to that end is not the power to make law, for no such power can be delegated by Congress, but the power to adopt regulations to carry into effect the will of Congress as expressed by the statute. A regulation which does not do this, but operates to create a rule out of harmony with the statute, is a mere nullity. *Lynch* v. *Tilden Produce Co.*, 265 U. S. 315, 320–322, 44 S. Ct. 488, 68 L. Ed. 1034; *Miller* v. *United States*, 294 U. S. 435, 439, 440, 55 S. Ct. 440, 79 L. Ed. 977, and cases cited. And not only must a regulation, in order to be valid, be consistent with the statute, but it must be reasonable. *International R. Co.* v. *Davidson*, 257 U. S. 506, 514, 42 S. Ct. 179, 66 L. Ed. 341.

The matter of requiring or allowing consolidated returns has long been in controversy, as clearly appears in reports of the Committee on Ways and Means and the Committee on Finance. Since the Revenue Act of 1918, there have been various provisions enacted by Congress relating to the method by which affiliated corporations should or could report income. In the 1918 Act, section 240 (a), Congress enacted a mandatory provision requiring affiliated corporations to make a consolidated return of net income. In the Revenue Act of 1921, section 240 (a) was amended so as to permit affiliated corporations to make either separate returns or, within their election, a consolidated return. But it was prescribed in the statute that if a return was made on either of such bases all returns thereafter should be made upon the same basis unless permission to change the basis was granted by the Commissioner. The consolidated returns provision in the revenue act remained the same in this particular respect until the Revenue Act of 1928, when it was considerably revised, and section 141 of that act extended to affiliated groups of corporations the privilege of making a consolidated return for the taxable year 1929 or any subsequent taxable year. Under the 1928 Act, a special provision was adopted, section 142, which required keeping the basis of income tax return the same for the year 1928 as had been adopted by the taxpayer for the year 1927. In the Revenue Act of 1932, section 141 remained unchanged, excepting for insertion of a parenthetical clause.

There was not enacted any provision similar to section 142 of the 1928 Act. In the Revenue Act of 1934, Congress limited the privilege of filing consolidated returns to affiliated groups of railroad corporations (section 141 (a), (d)). Throughout this history of the consolidated returns provisions in the various revenue acts, it is clear that the requirement that consolidated returns must be made by affiliated corporations has been relaxed. Review of reports of the two Finance Committees of Congress shows that the consolidated returns provision was first enacted in the Revenue Act of 1918 because of the excess profits tax then in effect. With the repeal of the excess profits tax and the adoption of net loss provisions in the revenue acts, it has appeared to the Congressional finance committees that the advantages to corporations in making consolidated income tax returns have diminished and that there was less reason for allowing consolidated returns. The Ways and Means Committee has, from time to time, recommended abolition of the consolidated return provision, but the Treasury has consistently recommended to Congress that abolition of the consolidated returns provision was undesirable. The consolidated returns provision, revised, has been reenacted from time to time as a compromise measure. It is not material to explore the legislative history of the consolidated returns provisions in the various revenue acts excepting to point out that it is clear that Congress has allowed corporations a new election from time to time as the law has been changed and that when Congress intended that there should not be a new election under a new act it has so stated in the new act. Cf. section 142, 1928 Act. This is brought out in the report of the hearings before the Ways and Means Committee considering the proposed Revenue Act of 1934 (hearings December 15 to 21, 1933, and January 9 to 11, 1934, pp. 86, 87). Roswell Magill, representing the Treasury Department, was asked by a member of the Committee if it was not true that affiliated corporations had the option of making separate returns or consolidated returns. The answer was in the affirmative. The further question was asked whether an affiliated group of corporations having once elected, then "must proceed along the line of their election." To this question Magill replied in the affirmative and stated, "but a new election has been given them, from time to time, as the law has been changed." Thus, we understand that whatever may have been the requirement under a specific revenue act and under approved regulations of the Commissioner, it has been recognized that there is a new election when the revenue act is changed, unless the new revenue act specifies otherwise. (Cf. section 142 of the 1928 Act.) We believe Congress has intended that this should be the procedure.

Congress gave to an affiliated group of corporations the privilege of making a consolidated return for a taxable year in lieu of separate

returns under the provisions contained in section 141 (a) of the Revenue Act of 1932. Section 141 is set forth in the margin.[2] The privilege of making a consolidated return was conditioned upon consent to regulations prescribed by the Commissioner under section 141 (b) and the making of the consolidated return constitutes such consent. The statute itself is silent on whether the election to make a consolidated return for one year is a binding election with respect to the method of making income tax returns for subsequent years. The Commissioner prescribed article 11 (a) as part of Regulations 78. This requirement may have been reasonable and valid under section 141 (b) of the Revenue Act of 1932 at the time the regulations were approved. We do not decide that question. However, the Revenue Act of 1932 underwent material revision by the enactment of revenue provisions in the National Industrial Recovery Act on June 16, 1933. The reason for amending the Revenue Act of 1932 in the Recovery Act was to provide additional taxes sufficient to pay interest and sinking fund charges on an appropriation made by Congress in the National Industrial Recovery Act. The amendments to the 1932 Act were extensive and, in particular, the income tax provisions relating to domestic corporations were materially changed. It was expected that there would be a general increase in taxes as a result of the amendments. We come now to consideration of the changes in the Revenue Act of 1932 enacted in June 1933 that affected taxation of corporations for the years 1933, 1934, and 1935.

Taxation of corporation income was affected by sections 215 (a), (f); 216 (a); 218 (e) of the National Industrial Recovery Act, as

[2] SEC. 141. CONSOLIDATED RETURNS OF CORPORATIONS.

(a) PRIVILEGE TO FILE CONSOLIDATED RETURNS.—An affiliated group of corporations shall, subject to the provisions of this section, have the privilege of making a consolidated return for the taxable year in lieu of separate returns. The making of a consolidated return shall be upon the condition that all the corporations which have been members of the affiliated group at any time during the taxable year for which the return is made consent to all the regulations under subsection (b) (or, in case such regulations are not prescribed prior to the making of the return, then the regulations prescribed under section 141 (b) of the Revenue Act of 1928 in so far as not inconsistent with this Act) prescribed prior to the making of such return; and the making of a consolidated return shall be considered as such consent. In the case of a corporation which is a member of the affiliated group for a fractional part of the year the consolidated return shall include the income of such corporation for such part of the year as it is a member of the affiliated group.

(b) REGULATIONS.—The Commissioner, with the approval of the Secretary, shall prescribe such regulations as he may deem necessary in order that the tax liability of an affiliated group of corporations making a consolidated return and of each corporation in the group, both during and after the period of affiliation, may be determined, computed, assessed, collected, and adjusted in such manner as clearly to reflect the income and to prevent avoidance of tax liability.

(c) COMPUTATION AND PAYMENT OF TAX.—In any case in which a consolidated return is made the tax shall be determined, computed, assessed, collected and adjusted in accordance with the regulations under subsection (b) (or, in case such regulations are not prescribed prior to the making of the return, then the regulations prescribed under section 141 (b) of the Revenue Act of 1928 in so far as not inconsistent with this Act) prescribed prior to the date on which such return is made; except that for the taxable years 1932 and 1933 there shall be added to the rate of tax prescribed by sections 13 (a), 201 (b), and 204 (a), a rate of ¾ of 1 per centum.

well as by other provisions of the Recovery Act. Briefly, a new capital stock and excess profits tax was enacted and the net loss provisions of the 1932 Act, sections 117; 23 (i); 169, 187, and 287, were repealed. Section 141 (c) was amended.[3] It is clear from these amendments that taxation of corporation income was materially changed in the direction of increasing taxes, because under the Revenue Act of 1932 domestic corporations were not subject to capital stock or excess profits taxes and they had the benefit of the net loss provisions. Also, under section 141 (c) of the 1932 Act, the differential in tax upon consolidated income, where consolidated return was made, added to the normal rate of tax on corporations a rate of 3/4 of 1 percent, which operated to make corporation income taxable at the rate of 14 1/2 percent in cases where consolidated returns were made, as compared with 13 3/4 percent where separate returns were made. (See section 13 (a)). This differential in tax favored the making of separate returns as against consolidated returns and corporations electing to make consolidated return understood and accepted the increase in the tax rate. The amendment to section 141 (c) made by section 218 (e) of the National Industrial Recovery Act increased the differential in corporate tax to an added rate of 1 percent for the years 1934 and 1935, so that the tax on consolidated corporation income of corporations making consolidated return was increased to 14 3/4 percent under the National Industrial Recovery Act as compared with 14 1/2 percent under the 1932 Act.

It is not material to the decision of the question before us to explore the comparative advantages or disadvantages to groups of affiliated corporations, after amendment of the 1932 Act, to make consolidated returns instead of separate returns. The fact is that there was a new revenue act for the year 1933 affecting taxation of corporations. The petitioner corporation in this proceeding considered it preferable to make income tax returns on the basis of a separate return for the year 1933. Where there are two methods of making income tax return available to corporations which involve a choice between two possibly different tax liabilities, it is reasonable that corporations should consider the practical aspects of the election to make separate returns or consolidated returns. Certainly, since the 1928 Act, Congress has allowed affiliated corporations freedom to entertain such considerations. From the comparison made above of the Revenue

[3] [Sec. 218 (e), National Industrial Recovery Act.] Effective as of January 1, 1933, section 141 (c) of the Revenue Act of 1932 is amended by striking out "except that for the taxable years 1932 and 1933 there shall be added to the rate of tax prescribed by sections 13 (a), 201 (b), and 204 (a), a rate of three-fourths of 1 per centum" and inserting in lieu thereof the following: "except that for the taxable years 1932 and 1933 there shall be added to the rate of tax prescribed by sections 13 (a), 201 (b), and 204 (a), a rate of three-fourths of 1 percentum and except that for the taxable years 1934 and 1935 there shall be added to the rate of tax prescribed by sections 13 (a), 201 (b), and 204 (a), a rate of 1 per centum."

Act of 1932 as it stood at the time petitioner elected to make a consolidated return for the year 1932 and as it was amended in 1933 and stood on March 15, 1934, when income tax return for the year 1933 became due, we think it clear that there were two entirely different tax situations for the years 1932 and 1933 and that the factors to be considered when petitioner elected to make a consolidated return for the year 1932 were different when the time arrived to make income tax return for 1933. The new factors appeared to be destined to apply to the years 1933, 1934, and 1935. Of course, taxpayers could not on March 15, 1934, anticipate that a new revenue act would be adopted for the year 1934 on May 10 of that year. It obviously became of practical importance for affiliated corporations to consider anew the method of making income tax return for the year 1933 and to consider anew the increased rate of tax upon corporations making consolidated returns. The new taxes on capital stock and excess profits, the repeal of the net loss provisions, the increase in the tax differential applicable to consolidated income for 1934 and 1935, all constituted changes in the law affecting tax liability. We point out that after the enactment of the excess profits tax in 1916 corporations generally resorted to making separate returns. (Hearings before the Committee on Ways and Means, 73d Cong., Dec. 15–21, 1933, Jan. 9–11, 1934, pp. 86, 88, 94.) We think that when an excess profits tax was enacted in 1933 Congress must have been cognizant of the possibility that affiliated corporations might elect to make separate returns for 1933, and that, if Congress had intended that separate returns should not be made for 1933 where consolidated returns were made for 1932, Congress would have so provided in the amendments to the 1932 Act as it had so provided by section 142 of the 1928 Act. In the absence of any clear expression in the statute, as it applied to the year 1933, that Congress intended that corporation income tax returns for 1933 should be made on the same basis as for the year 1932, even though changes in the law were made (cf. section 142, Revenue Act of 1928), we must conclude that petitioner had a new election for the year 1933 because the law was changed.

Under the circumstances reviewed above, and upon our opinion that Congress intended that a new election as to the method of making corporation income tax returns should be given, from time to time, as the revenue act is changed, we must conclude that the Commissioner's application of article 11 (a) of Regulations 78 to the taxable year 1933 was not reasonable and was not consistent with the new revenue act for 1933. The application of article 11 (a) to the year 1933 does not carry out any intent of Congress that we are able to discover but, in fact, contravenes the apparent intent of Congress that there should be a new election when the law is changed.

The determination of the Commissioner in this proceeding imposes an unreasonable restriction upon the petitioner. The determination is reversed.

Petitioner has paid the full amount of the tax reported on its separate return. However, the parties have stipulated that certain adjustments should be made. Consequently, there must be recomputation of the tax under Rule 50.

Reviewed by the Board.

*Decision will be entered under Rule 50.*

OPPER concurs only in the result.

MELLOTT dissents.