COMMERCIAL SHEARING & STAMPING COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 76778, 84338, 85427. Filed May 26, 1961.

*Donald J. Lynn, Esq.*, and *Robert G. Skinner, Esq.*, for the petitioner.

*William O. Allen, Esq.*, for the respondent.

OPINION.

OPPER, *Judge:* When petitioner, for fiscal 1954, filed its first consolidated return under the 1954 Code, the regulations expressly referred to in sections 1501 and 1502, I.R.C. 1954,[1] had not yet been promulgated. One of the statutory prerequisites for the filing of a consolidated return was that the taxpayers "consent to all the consolidated return regulations."

After the regulations under the 1954 Code were promulgated and the time arrived for petitioner and its affiliates to file their returns for fiscal 1955, they failed to file such consent, or to do the act which the statute and regulations consider the equivalent thereof, namely, to file a consolidated return.[2] We think that, even if, unlike the present situation, there were no more to a case than this, the enactment of a new revenue act, coupled with the issuance of new regulations,

---

[1] SEC. 1501. PRIVILEGE TO FILE CONSOLIDATED RETURNS.

An affiliated group of corporations shall * * * have the privilege of making a consolidated return * * * in lieu of separate returns. The making of a consolidated return shall be upon the condition that all corporations which at any time during the taxable year have been members of the affiliated group consent to all the consolidated return regulations prescribed under section 1502 prior to the last day prescribed by law for the filing of such return. The making of a consolidated return shall be considered as such consent. * * *

SEC. 1502. REGULATIONS.

The Secretary * * * shall prescribe such regulations as he may deem necessary in order that the tax liability of any affiliated group of corporations making a consolidated return and of each corporation in the group * * * may be returned, determined, computed, assessed, collected, and adjusted, in such manner as clearly to reflect the income-tax liability and the various factors necessary for the determination of such liability, and in order to prevent avoidance of such tax liability.

[2] Income Tax Regs.: Sec. 1.1502–1 PRIVILEGE OF MAKING CONSOLIDATED RETURNS.— (a) Section 1501 gives * * * the privilege of making a consolidated income tax return * * * upon the condition that all corporations which have been members of the affiliated group * * * *consent to the regulations under section 1502 applicable to such taxable year and any amendments thereof duly prescribed prior to the last day prescribed by law for the filing of the return; and the making of the consolidated return is considered as such consent.* [Emphasis added.]

might well give to a taxpayer and its affiliates a new election, so that it should not be assumed that Congress intended them "to buy a pig in a poke." In *Cereal Products Refining Corporation*, 39 B.T.A. 92 (1939), we said (p. 97):

It is not material to explore the legislative history of the consolidated returns provisions in the various revenue acts excepting to point out that it is clear that Congress has allowed corporations a new election from time to time as the law has been changed and that when Congress intended that there should not be a new election under a new act it has so stated in the new act. * * * Thus, we understand that whatever may have been the requirement under a specific revenue act *and under approved regulations of the Commissioner*, it has been recognized that there is a new election when the revenue act is changed, unless the new revenue act specifies otherwise. (Cf. section 142 of the 1928 Act.) We believe Congress has intended that this should be the procedure. [Emphasis added.]

And at page 99:

Where there are two methods of making income tax return available to corporations which involve a choice between two possibly different tax liabilities, it is reasonable that corporations should consider the practical aspects of the election to make separate returns or consolidated returns. Certainly, since the 1928 Act, Congress has allowed affiliated corporations freedom to entertain such considerations.

See *Lucas* v. *Sterling Oil & Gas Co.*, 62 F. 2d 951 (C.A. 6, 1933).

The Commissioner was not required to issue the same regulations under the 1954 Code as those previously in effect. *Helvering* v. *Reynolds Co.*, 306 U.S. 110 (1939). The new regulations could have differed either more or less favorably to affiliated groups, and in fact, in the situation before us, they were altered in numerous respects.

The most important change was the addition of the word "substantially" to the description of unfavorable amendments to the regulations justifying a new election in the future. The new consolidated return regulations, promulgated August 29, 1955, after requiring that an election made in one year would be binding for the future, continues:

unless * * * (2) subsequent to the exercise of the election to make consolidated returns * * * the regulations *under section 1502 which have been consented to*, have been amended and any such amendment is of a character which makes *substantially* less advantageous to affiliated groups as a class the continued filing of consolidated returns * * * [Income Tax Regs., sec. 1.1502–11, T.D. 6140, 1955–2 C.B. 317, 324; emphasis added.]

The addition of the emphasized word "substantially" was apparently a deliberate and significant change from the previous regulation. But there was nothing in the language of the 1954 Code, particularly section 1502, as finally enacted, which would serve as any sort of precautionary signal to a consolidated group that any difference in the regulation was in contemplation.

438

The addition of the concept that any unfavorable change would have to be "substantial" before it would justify a new election was itself an unfavorable alteration in the rights and commitments of affiliated groups as a whole. It could well go to the essence of the criteria to be considered by an affiliated group in coming to a decision as to whether or not to elect for the first time, and for all future years, the method of consolidated returns. The likelihood of being committed for a longer time and under a more stringent test must necessarily be unfavorable. But it need not be "substantially" unfavorable because in the 1939 Code regulation that requirement did not appear.

Petitioner's failure to accept the new regulations, by refusing to file any consolidated return in the first year after their promulgation, of course eliminates any binding effect of these regulations on petitioner and its affiliates. And as we have seen, the previous regulations, kept in effect by the "stopgap"[3] regulations, T.D. 6091, 1954-2 C.B. 47, under which the 1954 consolidated return was necessarily filed, did not contain the word "substantially." We are hence not required to determine whether the insertion of the word "substantially" was itself a substantial change. It suffices that it was, at least to some extent, an unfavorable change and must consequently, under respondent's own regulations, be regarded as adequate justification for a new election.

For the reasons stated, and without being required to consider other alternative contentions advanced by petitioner, we conclude that under the circumstances shown the issuance of the new regulation prior to the filing of petitioner's first return thereunder permitted it to elect, and that since it did so, that election must be respected. The deficiencies, accordingly, seem to us to have been erroneous.

Reviewed by the Court.

*Decisions will be entered under Rule 50.*

[3] Stopgap Regulations. T.D. 6091 * * * 1. All regulations * * * applicable under any provision of law in effect on the date of enactment of the [1954] Code, to the extent such provision of law is repealed by the Code, are hereby prescribed under and made applicable to the provisions of the Code corresponding to the provision of law so repealed insofar as any such regulation is not inconsistent with the Code * * * until superseded by regulations issued under the Code.